UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN MCLEOD,

    Petitioner,

                                         Case No. 03-74122
                                         Honorable Avern Cohn

v.

KURT JONES,

    Respondent.
_____/

## MEMORANDUM AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

### I. Introduction

This is a habeas case under 28 U.S.C. §2254. Brian McLeod ("Petitioner") filed a pro se petition for a writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights, raising eight claims detailed below. Petitioner was convicted in the Wayne County Circuit Court of two counts of second degree murder and sentenced to two concurrent life sentences. Respondent says that Petitioner's claims are procedurally defaulted and/or lack merit. The Court agrees. For the reasons that follow, the petition will be denied.

### II. Procedural History

On September 19, 1996, Petitioner was convicted in a bench trial of two counts of second degree murder in violation of M.C.L. §750.317; MSA 28.549. On October 29, 1996, Petitioner was sentenced to two concurrent life sentences. Petitioner filed a

direct appeal, raising two issues: (1) whether Petitioner's incriminating statements should be suppressed if they were the fruit of an illegal arrest and were taken without the assistance of counsel; and (2) whether Petitioner should have received an evidentiary hearing regarding the conduct of the police officers involved with his interrogation and the circumstances surrounding the procurement of his statement. The Michigan Court of Appeals affirmed Petitioner's convictions and sentences. People v. McLeod, 1998 WL 1988705, Mich. Ct. App. No. 201272 (per curiam) (December 4, 1998) (unpublished). The Michigan Supreme Court denied leave to appeal. People v. McLeod, 461 Mich. 881 (October 6, 1999).

On March 8, 2001, Petitioner filed a motion for relief from judgment in the trial court under MCR 6.500, rasing the following issues: (1) whether Petitioner was competent to stand trial; (2) whether Petitioner's incompetence led to the coercion of his confession; and (3) whether the prosecutor withheld exculpatory witness statements. The trial court denied the motion on February 11, 2002 under MCR 6.508(D)(2) and MCR 6.508(D)(3). A motion for reconsideration was denied on March 5, 2002.

Petitioner then filed a delayed application for leave to appeal with the Michigan Court of Appeals, raising the following issues: (1) whether Petitioner was denied a fair trial in light of the "manifest injustice," "miscarriage of justice," and "actual prejudice" endured by the Petitioner during the trial proceedings in this matter; and (2) whether Petitioner's motion for relief from judgment should have been granted. The Michigan Court of Appeals denied the application, citing MCR 6.508(D)." People v. McLeod, Mich. Ct. App. No. 240804 (Aug. 8, 2002) (unpublished). Petitioner then filed a delayed application for leave to appeal with the Michigan Supreme Court raising five issues: (1)

whether Petitioner was denied a fair trial in light of the "manifest injustice," "miscarriage of justice," and "actual prejudice" endured by the Petitioner during the trial proceedings in this matter; (2) whether Petitioner was competent to stand trial; (3) whether Petitioner's incompetence led to the coercion of his confession; (4) whether the prosecutor withheld exculpatory witness statements; and (5) whether Petitioner was denied effective assistance of trial and appellate counsel.  The Michigan Supreme Court denied leave, citing MCR 6.508(D).  People v. McLeod, 468 Mich. 891 (Table) Mich. Sup. Ct. No. 122520 (April 29, 2003).

On or about October 24, 2003, Petitioner filed the instant petition, raising the following claims:  (1) whether equitable tolling is applicable; (2) whether Petitioner should be granted evidentiary hearings relative to issues of ineffective assistance of counsel, prosecutorial misconduct, and new evidence; (3) whether Petitioner was denied a fair trial in light of the "manifest injustice," "miscarriage of justice," and "actual prejudice" endured by the Petitioner during the trial proceedings in this matter; (4) whether Petitioner was competent to stand trial; (5) whether Petitioner's incompetence led to the coercion of his confession; (6) whether the prosecutor withheld exculpatory witness statements; (7) whether Petitioner was denied effective assistance of trial and appellate counsel; and (8) whether Petitioner's incriminating statements should be suppressed if they were the fruit of an illegal arrest and were taken without the assistance of counsel.

Respondent filed a motion for summary judgment on the grounds that the petition was barred by the statute of limitations and that Petitioner failed to show entitlement to

statutory or equitable tolling. The Court denied Respondent's motion, finding that the state created an impediment to Petitioner's ability to file his motion for relief from judgment; and the untimely removal of the impediment did not bar Petitioner's subsequent request for habeas relief. See Opinion and Order filed July 21, 2004.

Respondent then filed papers addressing the merits of Petitioner's claims.

### III. Statement of Facts

The material facts as gleaned from the record follow.

On November 21, 1995, the bodies of Helen Thomas (Petitioner's aunt) and Latisha Thomas (Petitioner's cousin) were found in an apartment located at 21510 W. Seven Mile Road in Detroit, Michigan. The two victims sustained multiple head injuries caused by a blunt object and were pronounced dead at the scene. Several individuals were interviewed regarding their knowledge about the circumstances leading up to the death of the victims. The investigation led to the arrest of the Petitioner, who was brought to the police station and interviewed by Officer Monica Childs on November 22, 1995. Officer Childs read aloud to the Petitioner his Miranda rights from the Constitutional Rights Certificate of Notification Form because she noticed that he was having difficulty reading the content of the form.[1] Petitioner initialed the Form and the interview began. While Officer Childs was conducting the interview, Petitioner, who was 31 years of age at the time, requested that his mother be present. Petitioner's mother was called by both the Petitioner and by Officer Childs. Petitioner's mother arrived and spoke with him in the interrogation room. After Petitioner's mother left the interrogation

---

[1]Petitioner is illiterate and has "borderline deficient" intelligence.

room, Officer Childs was informed by the Petitioner that a lawyer was going to provide legal representation and that he (Petitioner) would not sign any documentation relative to Officer Childs' investigation. Despite this declaration, Petitioner continued to talk, but mostly to himself. The interview was terminated and the Petitioner was returned to his cell.

Two days later on November 24, 1995, Officer Childs received word that the Petitioner wanted to speak with her. Officer Childs informed the Petitioner of his Miranda rights in the same manner in which she did on November 22, 1995. It was at that time that the Petitioner confessed to killing his aunt and cousin.

## IV. Standard of Review

Under 28 U.S.C. §2254(d), a petitioner is not entitled to relief in a federal habeas corpus proceeding unless the state court's adjudication of his or her due process claim resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

"Clearly established federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-13.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  Furthermore, a federal court may not issue a writ of habeas corpus under the "unreasonable application" clause of 28 U.S.C. §2254(d) "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 365;  see also, Prince v. Vincent, 538 U.S. 634, 638-39 (2003).  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was *objectively* unreasonable," as opposed to transforming the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was reasonable.  Williams v. Taylor, 529 U.S. at 411.

### V.  Analysis

#### A.  Claim 1 - Equitable tolling

Petitioner's first habeas claim is that he is entitled to equitable tolling.  The issue of whether Petitioner is entitled to equitable tolling such that his petition was timely has been resolved.  The Court's July 21, 2004 order holds that petitioner is entitled to equitable tolling.  No further discussion is necessary as to this claim.

#### B.  Claim 2 - Evidentiary Hearing

Petitioner's second habeas claim is based on the allegation that evidentiary


hearings should have been held relative to (1) his claims of ineffective assistance of counsel, (2) prosecutorial misconduct, and (3) the discovery of new evidence.

In order for Petitioner to obtain an evidentiary hearing, he must comply with U.S.C. 28 U.S.C. §2254(e)(2), which prevents federal courts from granting evidentiary hearings to petitioners who "fail [ ] to develop the factual basis of a claim in State court proceedings." The Supreme Court has explained that "a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams v. Taylor, 529 U.S. 420, 432 (2000). The Court of Appeals for the Sixth Circuit has noted that "a finding of diligence would 'depend [ ] upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue a claim in state court." Sawyer v. Hofbauer, 299 F.3d 605, 610 (6th Cir. 2002).

## 2.  Ineffective Assistance of Counsel

Petitioner did not seek relief relative to his claim of ineffective assistance of trial and appellate counsel until he filed his delayed application for leave to appeal relative to his motion for relief from judgment in the Michigan Supreme Court. The basis for Petitioner's ineffective assistance of counsel claim is that neither trial or appellate counsel conducted an adequate investigation into Petitioner's mental state and competency or into Brady and other discoverable information that was allegedly being withheld by the prosecution.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-prong test to evaluate claims of ineffective assistance of counsel

pursuant to the Sixth Amendment. First the petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and thus was deficient. Id. at 687-88 (1984). Id. Second, Petitioner must show that the deficient performance prejudiced his defense. Id.

The facts upon which Petitioner bases his incompetency argument are as follows: (1) Petitioner was talking to himself while being interrogated by Officer Childs; (2) Petitioner's inability to read; (3) Petitioner's "borderline deficient" intelligence; and (4) Petitioner's reliance upon his mother. Each of these facts were within Petitioner's knowledge at trial, prior to the filing of his direct appeal, and prior to filing his motion for relief from judgment in this matter. However, Petitioner failed to request an evidentiary hearing at any of those times relative to the issue of ineffective assistance of counsel

Relative to Petitioner's claim of ineffective assistance of counsel as it relates to counsels' alleged failure to obtain relevant Brady and other discoverable information, the facts upon which Petitioner bases this claim is the allegedly withheld exculpatory statements by the prosecution. Specifically, Petitioner references a statement from Clarence Smith which essentially states that an unidentified person told Smith that two unidentified men killed Helen Thomas and Latisha Thomas. Petitioner knew about the alleged withheld discovery at the time he filed his motion for relief from judgment, as the issue was raised within those pleadings. It was not until Petitioner filed his delayed application for leave to appeal for collateral appellate review before the Michigan Supreme Court that he requested an evidentiary hearing relative to ineffective assistance of trial and appellate counsel as it relates to investigating the above

mentioned Brady issues.

Moreover, relative to the competency issue, Petitioner has not alleged a factual basis for an ineffective assistance of counsel claim which would warrant an evidentiary hearing. First, in January 1996, seven months before his trial, a competency hearing was held on Petitioner's behalf. Second, a forensic report was generated at that time which indicated that Petitioner was competent to stand trial. Third, in May 1996, four months prior to trial, another forensic evaluation was performed regarding Petitioner's criminal responsibility and diminished capacity. Finally, in July 1996, approximately two months before trial, Dr. Dexter Fields produced an evaluation and report regarding the Petitioner and concluded that he did "not meet the criteria for exculpability or diminished capacity." Accordingly, the facts of this case do not support Petitioner's claim that his trial counsel's representation was deficient relative to the competency issue. Appellate counsel was not ineffective relative to this issue because the trial court made a definitive finding regarding Petitioner's competency.

Accordingly, Petitioner's actions in the name of diligence are insufficient -- no facts that if proved would entitle him to habeas relief. Petitioner has therefore has not met his burden under 28 U.S.C. §2254(e)(2) to be granted an evidentiary hearing as to his ineffective assistance of counsel claim.

### 2. Prosecutorial Misconduct

Petitioner claims that the prosecutor in this case committed prosecutorial misconduct by failing to turn over the statement of Clarence Smith, who is purported to be an exculpatory witness. Even assuming that Petitioner diligently pursued this claim,

he is still not entitled to habeas relief.  "[T]he touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.  Smith v. Phillips, 455 U.S. 209, 219 (1982).  To that end, a reviewing court faced with allegations of prosecutorial misconduct must determine whether the prosecutorial misconduct at issue "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986), quoting, Donnelly, v. DeChristoforo, 416 U.S. 637, 643 (1974).  In other words, habeas relief is warranted if the prosecutor's conduct was "so egregious so as to render the entire trial fundamentally unfair. Id.

In Strickler v. Greene, 527 U.S. 263, 281-82 (1999), the Court articulated three components or essential elements of a Brady prosecutorial misconduct claim: (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) the "evidence must have been suppressed by the State, either willfully or inadvertently; and (3)  "prejudice must have ensued."

Reviewing the content of Smith's statement, discussed above, it is clear that Smith's statement is not necessarily a favorable piece of evidence for the Petitioner. Smith could not identify the individuals who gave him the alleged exculpatory information, nor could he identify the two men who allegedly killed Helen Thomas and Latishsa Thomas.  More importantly, Smith did not state that the Petitioner did not commit the murders.  Furthermore, Petitioner has not set forth any facts to support that the prosecutor suppressed the statement.  Finally, since the statement has little value toward the vindication of the Petitioner, its use or non-use was not prejudicial to Petitioner's case.

Accordingly, the Court finds Petitioner has shown insufficient facts that if proved would entitle him to habeas relief and further finds that he has not met his burden under 28 U.S.C. §2254(e)(2) to be granted an evidentiary hearing relative to this claim.

### 3. New Evidence

Finally, Petitioner says that newspaper articles which allegedly impugn the professional character of Officer Monica Childs, the police officer that interrogated Petitioner in this matter, are newly discovered evidence. Clarence Smith's statement is also cited as newly discovered evidence.

Newly discovered evidence does not constitute a freestanding ground for federal habeas relief, but rather that the newly discovered evidence can only be reviewed as it relates to an "independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993).

Petitioner claims that when Officer Childs interrogated him while was in custody, her actions constituted a violation of his Fourteenth Amendment rights. Petitioner further asserts that the newspaper articles document Officer Childs' history of and propensity for impropriety and the commission of constitutional violations when it comes to the rights of individuals in police custody are at issue. Additionally, Petitioner contends that the alleged suppression of Clarence Smith's statement makes this evidence "newly discovered" and therefore should be treated as such.

The Court has reviewed the newspaper articles that Petitioner cites in his habeas petition and finds that they do not relate to any independent constitutional violation in this case. These articles target a homicide inspector as being the individual who acted inappropriately; and Officer Childs was serving as a witness against the inspector. .

11

Second, as previously stated, Clarence Smith's statement does not exculpate the Petitioner from the commission of the murders in this case. Therefore, this evidence also does not relate to an independent constitutional violation.

Accordingly, Petitioner has shown sufficient facts that if proved would relate to an "independent constitutional violation occurring in the underlying state criminal proceeding" and further finds that he has not met his burden under 28 U.S.C. §2254(e)(2) to be granted an evidentiary hearing relative to this claim. See Herrera v. Collins, 506 U.S. at 400.

### C.  Claims 3 - 7 - Procedural Default

### 1.  In General

Respondent argues that Petitioner's claims 3-7 are procedurally defaulted due to his failure to properly present them in state court.

When state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless the petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

There are four criteria that this Court must analyze when reviewing a procedural default issue. First, for the doctrine of procedural default to apply, there must be a firmly established state procedural rule that is applicable to the Petitioner's claim and which the Petitioner failed to follow. Warner v. United States, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Second, the last state court from which the Petitioner sought review must have

invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. Coleman v. Thompson, 501 U.S. at 729-30. Third, the state procedural rule must constitute an adequate and sufficient state ground upon which to foreclose federal relief. White v. Schotten, 201 F.3d 743, 749 (6th Cir. 2000). "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996). Finally, the Court must determine whether the Petitioner has established cause for his failure to follow the rule and prejudice by the alleged constitutional error. Id.

## 2. The Claims

Claim 3 claims ineffective assistance of appellate. Claim 4 seeks suppression of certain inculpatory statements due to alleged coercive conduct by law enforcement officials. Claim 5 claims prosecutorial misconduct as a result of the suppression of Clarence Smith's statement. Claim 6 asserts that Petitioner was incompetent to stand trial. Claim 7 claims ineffective assistance of appellate counsel for failing to raise the competency issue. Because these issues were not raised on direct appeal, the Michigan trial and appellate courts did not review the merits of these claims, relying on MCR 6.508(D). Such reliance constitutes an adequate and independent procedural rule sufficient to invoke the doctrine of procedural default. See Simpson v. Jones, 238 F.3d 399 (6th Cir. 2000). Thus, the claims are defaulted.

Petitioner must therefore show "cause" for why these claims were not raised on

direct appeal and the "prejudice" Petitioner suffered as a result in order to obtain review. Petitioner maintains that the "cause" was his ineffective assistance of counsel by his appellate attorney. Whether or not Petitioner has established "cause" is evaluated under the standards set forth in <u>Strickland</u>, noted above.

Here, Petitioner does not have a valid ineffective assistance of appellate counsel claim as a basis for "cause" relative to each of his claims. First, the Court has already found that Clarence Smith's statement nor newspaper articles referencing Officer Childs are exculpatory evidence, thereby vitiating Petitioner's prosecutorial misconduct claims. Second, as previously stated, the trial court held a competency hearing and at least two doctors evaluated Petitioner and found that he was competent to stand trial and that he did not meet the criteria for exculpability or diminished capacity. In light of the fact that it was not the job of the Michigan Court of Appeals to have Petitioner re-evaluated, but rather to rely upon the psychological assessment made at trial, raising the issue of whether Petitioner was competent would have been an exercise in futility. *See, 28 U.S.C. §2254 (e)(1)*; <u>Demonsthenes v. Baal,</u> 495 U.S. 731, 735 (1990) (a state court's conclusion regarding a defendant's competency is entitled to such a presumption" of correctness). Third, relative to the claim that an evidentiary hearing was necessary in this matter, as previously stated, Petitioner failed to meet his burden under 28 U.S.C. §2254(e)(2) to be granted an evidentiary hearing relative to any of the issues raised by the Petitioner. Fourth, aside from Petitioner's self-serving assessment of this matter, Petitioner has not set forth any facts showing that he was coerced into making a statement to Officer Childs regarding the subject murders.

As such, Petitioner has failed to establish "cause" to justify these five claims not

being brought on direct appeal. Since no cause has been demonstrated, the Court need not address whether Petitioner can show "prejudice."

### 3. Actual Innocence

In an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. Murray v. Carrier, 477 U.S. 478, 479-480 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence of actual innocence that was not presented at trial. Schulp v. Delo, 513 U.S. 298, 324 (1995). Moreover, actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998); see also, Hillard v. United States, 157 F.3d 444, 450 (6th Cir. 1998).

Petitioner has failed to support his self-serving assertion of "actual innocence" with any new reliable evidence that was not presented at trial. The Court has reviewed the new evidence Petitioner claims would support such a finding of "actual innocense" (i.e., Clarence Smith's statement and news paper articles regarding Officer Childs) and the Court finds that this evidence is not sufficient to justify a finding of actual innocence.

### D. Claim 8 - Illegal Arrest and Suppression of Statements

Petitioner's final habeas claim asserts that he was subject to an illegal arrest and the inculpatory statements derived from that arrest should have been suppressed.

Respondent says that this claim is not cognizable on habeas review.

Federal courts will not address a Fourth Amendment claim upon habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes.  Stone v. Powell, 428 U.S. 465, 494-95 (1976); Machacek v. Hofbauer, 213 F.3d 947, 952 (6th Cir. 2000).

Federal courts will also not re-examine a habeas petitioner's claim that post-arrest statements or other evidence should have been suppressed as "poisonous fruit" of his illegal arrest where the state provided an opportunity for full and fair litigation of such claims prior to trial.  See Walendzinski v. Renico, 354 F. Supp. 2d 752, 759 (E.D. Mich. 2005).  A petitioner also cannot raise a Fourth Amendment claim that his confession was the product of an illegal arrest if he raised the factual basis for this claim in the state trial and appellate courts, and the state courts thoroughly analyzed the facts and applied the proper constitutional law in rejecting his claim.  Lovely v. Jackson, 337 F.Supp.2d 969, 976 (E.D. Mich. 2004).

A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of illegal arrest in a habeas action.  Riley v. Gray, 674 F.2d 522, 526 (6th Cir. 1982).   First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim." Id.  "Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." Id.

Referencing the first inquiry, the mechanism provided by the State of Michigan for the resolution of Fourth Amendment claims is, in the abstract, clearly adequate.

MCR 6.110(D); see e.g., People v. Ferguson, 376 Mich. 90, 93-94, 135 N.W.2d 357 (1965) (motion to suppress); People v. Harris, 95 Mich. App. 507, 509, 291 N.W.2d 97 (1980).  Michigan Court Rules and case law provide an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress.  Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a claim of appeal or by leave, by filing an application for leave to appeal.  MCR 7.204; MCR 7.205.  These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing, on direct appeal or by application relative to an unfavorable decision.  See O'Berry v. Wainwright, 546 F.2d 1204, 1213 (5th Cir. 1977).

      Here, Petitioner took advantage of the procedural mechanism.  Petitioner had a Walker hearing in the trial court regarding the legality of his arrest and the voluntariness of his statements.  The trial court found the arrest and statements were valid.  The Michigan Court of Appeals carefully reviewed the arrest and the statements and likewise concluded there was no error.  Because Petitioner was afforded and opportunity to challenge, and did challenge, the legality of his arrest and the admission of his statements, Petitioner is not entitled to habeas relief on this claim.

      Moreover, to the extent that Petitioner argues that the incriminating statements that he made to Officer Childs should have been suppressed because they were made without the benefit of counsel in violation of the Sixth Amendment, this claim lacks merit.  The Michigan Court of Appeals considered this issue and held, citing state law, that his rights were not violated because the record showed that Petitioner initiated the

conversation. The same result is true under federal law. Under federal law, once an accused has invoked the right to counsel, the interrogation must cease until counsel has been made available unless the accused himself "initiates further communication, exchanges or conversations" with the police. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). Here, as the court of appeals found, Petitioner was read his Miranda rights prior to the initiation of the first interrogation regarding the murders of Helen Thomas and Latisha Thomas. After Officer Childs was informed about an attorney being sought for Petitioner's defense, the interrogation ultimately stopped, and Petitioner was detained. After being detained for two days, Petitioner initiated another conversation with Officer Childs. Officer Childs again read Petitioner his Miranda rights and Petitioner proceeded to confess to the murders. Therefore, Petitioner sufficiently initiated discussion of the murders after invoking his right to counsel. See Oregon v. Bradshaw, 462 U.S. 1039, 1045-46 (1983).

In short, the state court's adjudication of Petitioner's Sixth Amendment violation claim was not an unreasonable application of clearly established federal law and was not an unreasonable interpretation of the facts. Petitioner is therefore not entitled to relief on this claims.

### **VI. Conclusion**

For the reasons stated above, Petitioner's claims are either barred by the doctrine of procedural default or lack of merit. Accordingly, the petition is DENIED. This case is DISMISSED.

SO ORDERED.


Dated:  August 23, 2005

<div style="text-align:right">
 s/Avern Cohn<br>
AVERN COHN<br>
UNITED STATES DISTRICT JUDGE
</div>


I hereby certify that a copy of the foregoing document was sent to counsel of record on this date, August 23, 2005, by electronic and/or ordinary mail.

<div style="text-align:right">
 s/Julie Owens<br>
Case Manager, (313) 234-5160
</div>